IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TQ DELTA, LLC,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>COXCOM LLC and<br>COX COMMUNICATIONS INC.,<br><br>　　　　　　Defendants. | C.A. No. 15-612 (GBW)<br><br>**REDACTED – PUBLIC VERSION**<br>Original Filing Date: September 18, 2024<br>Redacted Filing Date: September 25, 2024 |

**DEFENDANTS COXCOM LLC AND COX COMMUNICATIONS INC.'S
LETTER BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION
TO STRIKE THE "NON-INFRINGING ALTERNATIVES" OPINIONS
OF DR. KAKAES (D.I. 553)**

OF COUNSEL:

L. Norwood Jameson
Matthew C. Gaudet
David C. Dotson
John R. Gibson
Alice E. Snedeker
DUANE MORRIS LLP
1075 Peachtree Street N.E., Suite 1700
Atlanta, GA  30309-3929
(404) 253-6900

Joseph A. Powers
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA  19103-4196
(215) 979-1000

John M. Baird
DUANE MORRIS LLP
505 9th Street, N.W., Suite 1000
Washington, DC  2004-2166
(202) 776-7819

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com

*Attorneys for Defendants Coxcom LLC and
Cox Communications Inc.*

Michael J. Turton
Andrew N. Saul
Mitchell G. Stockwell
KILPATRICK TOWNSEND & STOCKTON
1100 Peachtree Street NE Suite 2800
Atlanta, GA  30309
(404) 815-6500

September 18, 2024

Dear Judge Williams:

TQ Delta's ("TQD") Motion to Strike three alleged "non-infringement alternative" opinions of Defendants' expert Dr. Kakaes (D.I. 553) should be denied. Contrary to TQD's letter brief (D.I. 554, "Br."), the opinions were timely disclosed, there has been no violation of Rule 37, and *Pennypack* does not favor exclusion.

## I.   Each of the Challenged Opinions Was Timely Disclosed

The three challenged opinions are addressed separately below.

<u>Amplifiers with Greater Dynamic Range (Ex. 1, Kakaes Reb. Rpt. (Cox), App. B, ¶100)</u>. Paragraph 103 does ***not*** set forth an opinion on non-infringing alternatives at all. It is <u>not</u> the section of Dr. Kakaes's report that addresses non-infringing alternatives, and Defendants' damages expert (Chris Bakewell) does not treat Paragraph 103 (or its related analysis) as if it were a non-infringing alternative.

Instead, it is a timely rebuttal of an opinion from TQD's technical expert (Dr. Madisetti) on apportionment. Dr. Madisetti attributed certain aspects the physical layer (called the "PHY layer") portion of the MoCA specification to the Asserted Patents. He opined that the Asserted Patents account for "three of the eight fundamental PHY features" of MoCA, and that if he were to "assign different weights to" those features, "the Asserted Patents would easily account for more than 50% of the technical contribution" due to the alleged importance of clipping. Ex. 2 Madisetti Rpt. (Cox) at ¶ 979; Ex. 1 Kakaes Reb. Rpt. (Cox) App. B ¶¶ 81, 98.

In response, Dr. Kakaes opined that there are actually 23 different PHY functions in MoCA, only one of which is directed to the "███████" that TQD accuses of infringing the Asserted Patents. *Id.* at ¶¶ 88-89. Dr. Kakaes then addresses some of the other PHY functions, and notes that some of them are more important – and therefore more valuable – than the ███████. Even if the Asserted Patents were credited with the entirety of ███████, it would be entitled to much less of the overall value of the MoCA functionality than what Dr. Madisetti opined. Specifically, Dr. Kakaes opined that ███████ ███████ solves a myriad of problems in addition to clipping, an isolated problem that can also be addressed through accepting higher power consumption:

> 102. Of the set of 23 PHY-related features/capabilities, one example that is far more valuable and more complex than the accused functionality is ███████ ███████
>
> 103. ███████ are used to correct transmission errors caused by any number of mechanisms, including but not limited to clipping, as the asserted claims allegedly help to avoid. But clipping can be easily avoided by ensuring that the dynamic range of the power amplifier is sufficient to avoid clipping. As in most, if not all, engineering problems there is a "price" to any benefit. The "price" of higher degree of linearity is an increase in power consumption, but for the devices in question, increased power consumption is a very limited "price". Lowering the

> power needed can be important in certain devices, e.g. mobile phones, where power is very limited, but that is not the case for the Accused Devices.
>
> 104.   On the other hand, ▮▮▮▮▮, ensuring sufficient quality cannot be expected in most cases, as transmission errors are likely and the causes vary across a broad spectrum. Combatting the occurrence of such errors ▮▮▮▮▮ would require a much larger transmission power, which may still be insufficient to combat all types of errors, while ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮ combat all types of errors.

Ex. 1, Kakaes Reb. Rpt. (Cox), App. B ¶¶ 99-101.

Despite the fact that Dr. Kakaes was clearly providing proper rebuttal to Dr. Madisetti, and was in no way providing newly disclosed non-infringing alternatives, TQD persists in asserting that Dr. Kakaes opined that one should eliminate the ▮▮▮▮▮ and instead use "an amplifier with a greater dynamic range" and that that constitutes one of his non-infringing alternatives. This is clearly not so. In contrast to TQD's misquote, the challenged paragraph does not even refer or discuss eliminating ▮▮▮▮▮. *See, e.g.,* Br. at 1 (erroneously attributing text to Dr. Kakaes that is not in paragraph 103: "¶103 ('▮▮▮▮▮ Use an Amplifier with a Greater Dynamic Range')"). Instead, the paragraph (repeated in full above) describes the comparable *value* of features. It tracks the very same concept that the specification says about the impact of high PAR and the pros and of known solutions. '243 Patent, 2:25-27 ("An increased PAR can result in a system with high power consumption and/or with high probability of clipping the transmission signal."); 8:23-35. In other words, one of the "problems" from high PAR that the specification identifies is the problem of higher power consumption.[1] Rather than suggesting a non-infringing alternative to solve that "problem," Dr. Kakaes is opining that this problem is not nearly as important as the problems addressed by other MoCA functions, ▮▮▮▮▮▮▮▮▮▮▮.

TQD does not point to anything in Defendants' disclosures indicating Paragraph 103 will be used to support a non-infringing alternative. If any confirmation is needed, Mr. Bakewell, Defendants' damages expert, does not identify or rely upon this as a non-infringing alternative in his economic analysis. *See, e.g.*, Ex. 3 (Rebuttal Expert Report Regarding Damages), at pp. 64-65.

This opinion is entirely relevant and is a permissible rebuttal to Dr. Madisetti's opinions regarding the value that the Patents-in-Suit provide to the larger MoCA functionality. *See, e.g.*, Ex. 6 *Heron Therapeutics, Inc. v. Fresenius Kabi USA, LLC.,* C.A. No. 22-985, D.I. 150 at 8 n. 2 (D. Del. May 15, 2024) ("*Pennypack* addresses late disclosure of information by one party. Here, the portions of Dr. Little's opinions at issue rebut the opinions of Dr. Rabinow. For that reason, there is no issue of late disclosure."); Ex. 7 *CIRBA Inc., et al. v. VMWare, Inc.*, C.A. No. 19-742-GBW, D.I. 1663 at 11 (D. Del. Mar. 30, 2023) (denying motion to strike allegedly new opinions provided by Dr. Madisetti; "It is proper for a reply expert report to contradict or rebut evidence on the same subject matter identified by the opposing party's expert report. In doing so, the reply

---

[1] TQD's expert made the same point to the USPTO during reexamination. Ex. 5 Decl. Dr. Cooklev, Reexam 90/014,707 ('243 Patent), Aug. 3, 2022, at ¶¶ 47-51 (explaining that clipping occurs when signals exceed the "dynamic range" of components "such as an amplifier," and that components with larger dynamic ranges can avoid clipping but increase power consumption).

expert report may cite to new evidence and data, so long as this is offered to directly contradict or rebut the opposing party's expert.") (internal citations omitted).

<u>Second-Stage Bit Scrambler (Ex. 1 ¶¶653-665 (Kakaes Reb. Rpt. (Cox) §X.E.1.c))</u>.

Dr. Kakaes's opinion that a second-stage bit scrambler is a non-infringing alternative was timely disclosed in a prior interrogatory response.



He describes an implementation of bit scrambling located *after* ▮▮▮. *Id.* at ¶ 653. Dr. Kakaes refers to this as a "Second-Stage Bit Scrambler" ▮▮▮. *Id.* This theory was fully disclosed in Cox's response to Interrogatory No. 13, which referred to an NIA based on ▮▮▮ is a non-infringing alternative. … ▮▮▮

*See, e.g.*, Br. Ex. C, Cox's Third Supp. Resp. to Interrogatory 13, pp. 13-14. During the parties' meet and confer process, including teleconferences on June 7 and September 10, 2024, TQD complained that the interrogatory response did not describe two stages of bit scrambling, because the response did not describe also continuing to use ▮▮▮. In compromise, Defendants agreed to strike the following portions of Dr. Kakaes's opinions:

> "653. … ▮▮▮
>
> ▮▮▮ that produces the same waveforms as the current standards dictate and thus there would be no difference in the communication system's performance as the communication system would be functionally the same in each of these two cases. …"

Ex. 1 Kakaes Reb. Rpt. (Cox) ¶¶ 653-657 (strikethrough used to show withdrawal). By striking the language identified above, Defendants have addressed the complaint raised on the meet and confer. In its own "skeletal" argument, TQD's Motion does not raise any substantive reason that Dr. Kakaes's opinions go beyond proper expert elaboration of a disclosed theory. *See, e.g., TQ Delta, LLC v. Adtran, Inc.*, No. 14-954-RGA, 2021 WL 3728919, *4 (D. Del. August 23, 2021) (denying motion to strike and not addressing *Pennypack* factors because expert properly "expanded" on defense disclosed in fact discovery, which is "permissible" because "all details" of a defense "need not be disclosed" in contentions).

▮▮▮ (Ex. 1 Kakaes Reb. Rpt. (Cox) §X.E.1.d, ¶¶666-677). This section also relates to a non-infringing alternative that was fairly and timely disclosed.

Defendants previously agreed to strike all references to the one point that could even potentially be prejudicial, and confirm that agreement here: "NASA Tracking Data Relay Satellite System (TDRSS)." TQD's other complaints have no merit. This is not an issue of non-disclosure— TQD admits that Defendants disclosed this NIA in response to Interrogatory No. 14. Br. 3. Rather, TQD complains that Dr. Kakaes provides additional explanation and detail in support. That is the

point of expert opinions: to provide an independent expert analysis of facts and theories previously disclosed between the parties. While TQD complains that the interrogatory response "included no details to allow TQD to evaluate the suitability of this NIA," it was enough for Dr. Madisetti to respond to it in his opening report (Ex. 2 Madisetti Rpt. (Cox) ¶951), and provide a full rebuttal in his reply report (Ex. 4 Madisetti Reply Rpt. (Cox) ¶¶ 137-139). Moreover, Plaintiff had the opportunity to depose Dr. Kakaes at length over the course of two days regarding his opinions. Accordingly, TQD cannot complain of any prejudice.

## II. Because Each Opinion Was Timely Disclosed, the *Pennypack* Factors Are Inapplicable, but They Would Not Justify Exclusion in any Event.

The first challenged opinion is not a non-infringing alternative, and so TQD's letter brief misses the mark entirely on the alleged disclosure requirement.

The other two challenged opinions are non-infringing alternatives, but they were fully disclosed during the course of fact discovery and thus properly subject to further elaboration by Dr. Kakaes in his expert report. The *Pennypack* factors, therefore, are not relevant. *Adtran, Inc.*, 2021 WL 3728919, *4 ("Defendant's assertion of this defense is not untimely and I need not address the *Pennypack* factors."). But even if some portion of Dr. Kakaes's elaboration in the two NIAs was found to be untimely, exclusion is not warranted.

As to the first factor, TQD cannot identify any prejudice. Dr. Madisetti was able to respond to the NIAs as disclosed in Defendants' interrogatory response in his opening report, and was able to address Dr. Kakaes's more fulsome elaboration in his reply report. Moreover, TQD deposed Dr. Kakaes over the course of two days, where TQD questioned him on his non-infringing alternatives, and thus had every opportunity to test his opinions. The second and third factors also do not favor exclusion. To the extent there is any prejudice, it was cured via Dr. Madisetti's ability to provide a reply report and TQD's ability to question Dr. Kakaes. Nor has TQD identified any specific third-party evidence that it believes would be necessary—it merely sets forth conjecture and suppositions. On the fourth factor, TQD's overheated allegations are incorrect. *See Adtran*, 2021 WL 3728919, at *3 (declining to find willfulness or bad faith; while more detail could have been provided, the theory was disclosed and "expanded upon in Plaintiff's expert reports"). Finally, the three challenged opinions are important to rebutting TQD's damages claims.

        Respectfully,

        */s/ Jennifer Ying*

        Jennifer Ying (#5550)

JY:lo  
Enclosures  
cc:    Clerk of the Court (via hand delivery)  
        All Counsel of Record (via e-mail)